IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Medley LLC, [1]<br>        Debtor. | Chapter 11<br><br>Case No. 21-10526 (KBO) |
| MEDLEY LLC LIQUIDATING TRUST,<br>Plaintiff,<br><br>v.<br><br>EVERSHEDS SUTHERLAND (US) LLP,<br>Defendant(s). | Adv. Pro. No. 23-_____ |

**COMPLAINT TO AVOID AND RECOVER**
**TRANSFERS PURSUANT TO 11 U.S.C.§§ 544, 547, 548 AND 550**

The Medley LLC Liquidating Trust (the "Trust" or "Plaintiff", as applicable), established pursuant to the terms and conditions of the *Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Medley LLC* (the "Plan"),[2] by and through its undersigned counsel, files this complaint (the "Complaint") against Eversheds Sutherland (US) LLP ("Defendant") to avoid and recover preferential and/or fraudulent transfers made by Medley LLC (the "Debtor"). In support of this Complaint, the Trust alleges, upon information and belief, that:

---

[1]      The Debtor's current mailing address is c/o Medley LLC Liquidating Trust, c/o Saccullo Business Consulting, LLC, 27 Crimson King Drive, Bear, DE 19701.

[2]      Docket No. 445-1. Capitalized terms used but otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

## NATURE OF THE CASE

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of any interest in the Debtor's property that occurred during the ninety (90) day period prior to the commencement of the Debtor's bankruptcy case (the "Preference Period") pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), currently amounting to $2,015,986.53.

2. Subject to proof, pursuant to sections 544, 548 and 550 of the Bankruptcy Code and applicable state law, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made, any transfers that may constitute fraudulent conveyances.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to a case under title 11, in the United States Bankruptcy Court for the District of Delaware (the "Court"), captioned *In re Medley LLC*, Case No. 21-10526 (KBO), pursuant to 28 U.S.C. §§ 157 and 1334(b) and Article XIV of the Plan.

4. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2)(B), (F) and (H), and the Court may enter final orders for matters contained herein.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

6. The statutory and legal predicates for the relief sought herein are sections 544, 547, 548, and 550 of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure and applicable state law.

7.        Pursuant to 9013(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff hereby consents to the entry of a final order by the Court in connection with this Complaint, if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8.        On March 7, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court. From the Petition Date through the Effective Date (defined below) of the Plan, the Debtor remained in possession of its assets and continued to operate and manage its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.        On October 18, 2021, the Court entered the *Amended Findings of Fact, Conclusions of Law, and Order (I) Approving the Adequacy of Disclosures on a Final Basis and (II) Confirming the Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Medley LLC* (the "Confirmation Order")[3] confirming the Plan in the form attached as Exhibit A to the Confirmation Order.

10.        The Plan became effective on October 18, 2021 (the "Effective Date").[4] On the Effective Date, the Trust was established pursuant to the terms of the Plan and the terms of that certain *Liquidating Trust Agreement and Declaration of Trust* dated as of October 18, 2021 (the "LTA" and, together with the Plan and Confirmation Order, the "Plan Documents").[5] On the

---

[3]    Docket No. 445. Unless otherwise indicated herein, all references to "Docket No. __" relate to the main chapter 11 case, No. 21-10526 (KBO).

[4]    Docket No. 449.

[5]    *See* Plan §§ VII.C-D.

Effective Date, all of the Liquidating Trust Assets, and all Causes of Action, automatically vested in the Trust.[6]

11. Pursuant to Article IV of the Plan, holders of General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full. As disclosed in the Plan, the Debtor initially projected a recovery of 2.02% to 2.17% on account of Allowed General Unsecured Claims.[7] To date, the Trust has paid unsecured creditors (and reserved for creditors holding disputed claims) a recovery of approximately 8%.[8]

## THE PARTIES

12. Prior to the Effective Date of the Plan, the Debtor was a direct subsidiary of Medley Management, Inc. ("Medley Management").[9] The Debtor, Medley Management, and the Debtor's direct and indirect subsidiaries operated an alternative asset management firm offering yield solutions to retail and institutional investors.

13. The Plan Documents appointed Saccullo Business Consulting, LLC (the "Trustee") to administer the Trust.[10] Among other things, under the Plan Documents, the Trust and Trustee are authorized to "undertake to … investigate any Liquidating Trust Assets, including, but not limited to, Causes of Action"[11] and to "commence, litigate, and settle any Causes of Action or Claims relating to the Liquidating Trust Assets or rights to payment or Claims that belong to the Debtor as of the Effective Date."[12]

---

[6]   *Id.* § VII.C.

[7]   Plan § IV.A.

[8]   *See Notice of Distribution Under Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Medley LLC* [Docket No. 600].

[9]   Plan § II.A.

[10]  Confirmation Order ¶¶ MMM, 15; LTA § 2.7.

[11]  LTA § 3.2.9.

[12]  Confirmation Order ¶ 15; Plan § II.C.

14. Upon information and belief, Defendant was, at all relevant times, a provider of legal services to the Debtor, Medley Management and other direct and indirect subsidiaries of the Debtor and certain of their respective officers and directors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 999 Peachtree Street, NE, Suite 2300, Atlanta, Georgia 30309. Plaintiff is informed and believes and, on that basis, alleges that Defendant is a limited liability partnership residing in and subject to the laws of the State of New York.

## FACTUAL BACKGROUND

**Defendant's Services, Retention and Related Disclosures**

15. On September 17, 2019, the Securities and Exchange Commission's Division of Enforcement (the "SEC") informed Medley Management that it was conducting an informal inquiry, and requested the production and preservation of certain documents and records.[13] By letter dated December 18, 2019, the SEC advised Medley Management that a formal order of private investigation had been issued converting the informal inquiry into a formal investigation (the "SEC Investigation").[14] In connection with this SEC Investigation, Medley Management and the Debtor purportedly retained Defendant as counsel.[15]

16. Shortly after the Petition Date, on April 6, 2021, the Debtor filed an application to retain Defendant as special counsel (the "Retention Application"),[16] *nunc pro tunc* to the Petition Date,

---

[13]  Plan § II.I.

[14]  *Id*.

[15]  Supplemental Declaration (as defined below) ¶ 8.

[16]  Docket No. 87.

pursuant to sections 328(a)[17] and 327(e)[18] of the Bankruptcy Code. The proposed Scope of Services, as such term is defined in the Retention Application, included advice with respect to securities law and related litigation and regulatory matters, *i.e.*, the SEC Investigation.

17. In support of the Retention Application, the Debtor submitted the declaration of Mark D. Sherrill (the "Original Declaration") purporting to disclose all of Defendant's connections with the Debtor as required by Bankruptcy Rule 2014.[19] Among other things, the Original Declaration disclosed that "[d]uring the 90-day period prior to the Debtor's bankruptcy filing, Defendant received a total of $1,039,500.81 on account of work performed for the Debtor"[20] and further indicated that "in the prepetition period, Eversheds was compensated for its work within the Scope of Services by two insurers."[21]

18. Approximately three weeks after the Retention Application and the Original Declaration were filed, Defendant filed the *Supplemental Declaration of Mark D. Sherrill in Support of the Debtor's Application for an Order Authorizing the Retention and Employment of Eversheds Sutherland (US) LLP as Special Counsel for the Debtor Effective as of the Petition Date* ("Supplemental Declaration").[22] In the Supplemental Declaration, Defendant disclosed that prior

---

[17] Section 328(a) of the Bankruptcy Code provides, in relevant part, that the debtor "may employ . . . a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment." 11 U.S.C. § 328(a).

[18] Section 327(e) of the Bankruptcy Code provides, in relevant part, that the debtor "may employ, for a specified special purpose . . . an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e).

[19] Federal Rule of Bankruptcy Procedure 2014(a) provides, in relevant part, that the "application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." F. R. Bankr. P. 2014(a).

[20] Original Declaration ¶ 14.

[21] *Id.* ¶ 9. *See also* Retention Application ¶ 10.

[22] Docket No. 119.

to the Petition Date, it represented the "Medley complex" in the SEC Investigation, which included not only Medley Management and the Debtor, but also Medley Capital LLC and several current and former officers, directors and employees.[23]

19.     After the Court's order granting the Retention Application was entered, Defendant filed the *Second Supplemental Declaration of Mark D. Sherrill in Support of the Debtor's Application for an Order Authorizing the Retention and Employment of Eversheds Sutherland (US) LLP as Special Counsel for the Debtor Effective as of the Petition Date* ("Second Supplemental Declaration").[24]  Defendant disclosed the Debtor's request to expand Defendant's scope of services to the Debtor to include filings pursuant to the Securities and Exchange Act of 1934, and advice to the Debtor and its Board related to those same issues under the securities laws.[25]

**The Trust's Investigation**

20.     Upon the Effective Date, pursuant to the authority afforded the Trust under the Plan Documents, the Trust undertook to investigate Liquidating Trust Assets, which include, without limitation, the Debtor's Records and Causes of Action.  Through this process, the Trust concluded, among other things, that in the Retention Application and Declaration, Defendant misrepresented both the amounts and source of the prepetition payments that it received.

21.     The Trust's investigation revealed that Defendant was not, in fact, compensated pre-petition by insurers.  Medley Management requested coverage from Berkshire Hathaway Specialty Insurance Company ("Berkshire"), a D&O insurer, for the fees, costs and expenses incurred in connection with the SEC Investigation.[26] On January 4, 2021, Berkshire and Medley

---

[23]    Supplemental Declaration ¶ 8.

[24]    Docket No. 280.

[25]    Second Supplemental Declaration ¶ 8.

[26]    *See Medley LLC Liquidating Trust's Motion Pursuant to Federal Rule of Civil Procedure 60(b) to Vacate the Order Retaining Eversheds Sutherland (US) LLP and (II) That Portion of the Amended Omnibus Order*

Management entered into an interim funding agreement (the "Funding Agreement")[27] whereby Berkshire agreed to advance reasonable fees, costs and expenses in connection with the SEC investigation.[28] The Funding Agreement provided that Berkshire would advance to Medley Management the sum of $2,338,772.03 on or before January 20, 2021 (the "Advance").[29] At the time the Funding Agreement was entered, Defendant had issued invoices in the amount of $3,482,105.83 for services rendered through October 20, 2020.[30]

22. On January 14, 2021, Berkshire transferred the Advance to Medley Management.[31] Berkshire made no payment to Defendant on account of pre-petition legal fees and expenses. As shown in paragraph 25 below, on various dates ranging between December 10, 2020 and March 2, 2021, it was the Debtor that made certain payments to Defendant, two of which preceded the Funding Agreement. Accordingly, Defendant's disclosures in the Declaration and the Second Supplemental Declaration regarding the source of Preference Period transfers to Defendant were incorrect.

23. The Preference Period began on December 7, 2020. As shown in paragraph 25 below, on various dates ranging between December 10, 2020 and March 2, 2021, Defendant received five transfers totaling $2,015,986.53, more than $1 million in excess of what had previously been disclosed in Court filings. Accordingly, Defendant's disclosures regarding the amount it received from the Debtor during the Preference Period were also materially incorrect.

---

*Awarding the Final Fee Application to Eversheds Sutherland (US) LLP* [Docket No. 610] (the "Motion to Vacate"), Exh. B at 1-2.

[27] Motion to Vacate, Exh. B.

[28] Funding Agreement, at 2.

[29] *Id.* § 1(a)(i).

[30] *Id.*

[31] Motion to Vacate, Exh. C at 1.

24. On January 23, 2023, Defendant filed the *Third Supplemental Declaration of Mark D. Sherrill in Support of the Debtor's Application for an Order Authorizing the Retention and Employment of Eversheds Sutherland (US) LLP as Special Counsel for the Debtor Effective as of the Petition Date* (the "Third Supplemental Declaration").[32] In the Third Supplemental Declaration, Defendant admitted that it had, in fact, received $2,015,986.53 during the Preference Period.[33] Defendant further admitted that the payments it received pre-petition were made by the Debtor, not an insurer.[34]

**Transfers from the Debtor to Defendant During the Preference Period**

25. During the Preference Period, the Debtor made five transfers (each, a "Transfer" and collectively, the "Transfers") totaling $2,015,986.53 to Defendant, as follows:[35]

| Payment Date | Payment Type | Payment Amount |
|---|---|---|
| 12/10/2020 | Wire | $976,485.72 |
| 12/23/2020 | Wire | $200,000.00 |
| 1/26/2021 | EFT | $794,939.34 |
| 3/1/2021 | Wire | $26,181.47 |
| 3/2/2021 | EFT | $18,380.00 |
| **Total** | | **$2,015,986.53** |

26. The Debtor made the Transfers from an account in its name at City National Bank ending in -7483.

27. Upon information and belief, the Transfers were made to Defendant on account of the $3,482,105.83 in outstanding fees and expenses for services rendered through October 20, 2020 in connection with the SEC Investigation.

---

[32] Docket No. 609.

[33] Third Supplemental Declaration ¶¶ 7-8.

[34] *Id.* ¶ 11.

[35] Motion to Vacate, Exh. D. at 4, 8, 12.

28. Plaintiff has conducted an analysis of all readily available information of the Debtor and is seeking to avoid all of the transfers of an interest of the Debtor's property made by the Debtor to Defendant within the Preference Period. There is no dispute that Defendant received the Transfers in the amount of $2,015,986.53 from the Debtor during the Preference Period.

29. Although it is possible that some Transfers might be subject in whole or in part to defenses under 11 U.S.C. § 547(c), Defendant bears the burden of proof pursuant to 11 U.S.C. § 547(g) to establish any defense(s) under 11 U.S.C. § 547(c).

30. In connection with Plaintiff's due diligence under section 547 of the Bankruptcy Code, on or about January 13, 2023, the Trust, through counsel, sent a letter to Defendant, advising Defendant of the misrepresentations contained in Defendant's disclosures and seeking a return of the Transfers (the "Demand Letter"). The Demand Letter indicated that the Transfers may be subject to certain defenses and invited Defendant to engage in discussions aimed toward resolving the claims arising from the Transfers without the time and expense of litigation. The Demand Letter further asked that Defendant respond no later than January 20, 2023. Defendant did not respond to the Demand Letter other than to file the Third Supplemental Declaration with the Court, and did not engage in any substantive discussions with the Trust. To date, Defendant has not provided Plaintiff with any evidence to support any affirmative defense that it may assert.

31. Through a review of the Debtor's records, Plaintiff performed its own due diligence evaluation of the known and reasonably knowable affirmative defenses (if any) available to Defendant, including section 547(c)(4) of the Bankruptcy Code, assessing the data available with respect to the elements of that defense. Based upon this review, Plaintiff has determined that the claims to avoid the Transfers herein are viable and presented in good faith.

**Transfers from the Debtor to Defendant Prior to the Preference Period**

32. Additionally, from April 28, 2017 to December 1, 2020, the Debtor made fifteen transfers (each, an "Other Transfer", and collectively, the "Other Transfers"), totaling $3,346,713.39, as follows:

| Payment Date | Payment Amount |
|---|---|
| 4/28/2017 | $1,298.00 |
| 6/22/2017 | $26,483.00 |
| 8/30/2017 | $5,311.00 |
| 10/19/2017 | $22,086.10 |
| 12/14/2017 | $8,323.00 |
| 12/21/2018 | $909,065.21 |
| 12/31/2019 | $1,162,571.10 |
| 8/14/2020 | $200,000.00 |
| 8/14/2020 | $21,764.50 |
| 8/14/2020 | $49,112.33 |
| 9/9/2020 | $200,000.00 |
| 10/13/2020 | $200,000.00 |
| 11/2/2020 | $200,000.00 |
| 11/10/2020 | $140,699.15 |
| 12/1/2020 | $200,000.00 |
| **Total** | **$3,346,713.39** |

33. Upon information and belief, the Other Transfers were made to Defendant in connection with fees and expenses for services rendered through December 1, 2020 in connection with services provided to Medley Management or another person or entity comprising the "Medley complex" referenced in Defendant's Supplemental Declaration.

34. On the Petition Date, there were actual existing unsecured creditors holding claims allowable under Bankruptcy Code Section 502(e), who could have avoided the Other Transfers under applicable state law.

**Reservation of Rights**

35. During the course of this adversary proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period and/or or during the lookback period in connection with section 548 of the Bankruptcy Code or applicable state law. It is Plaintiff's intention to avoid and recover all transfers made by the Debtor of an interest of in the Debtor's property and to or for the benefit of Defendant or any other transferee that are avoidable and recoverable under the foregoing statutes. As such, Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfers and Other Transfers, (ii) additional transfers, (iii) modifications of and/or revisions to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action (*e.g.*, but not exclusively under, 11 U.S.C. §§ 502(d), 542, 543, 544, 545, 549 and/or 553) (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

36. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

37. As more particularly described herein, during the Preference Period, the Debtor made the Transfers identified in paragraph 25 above to Defendant in an aggregate amount of not less than $2,015,986.53.

38. Each Transfer was made from the Debtor's account ending in -7483 and constituted a transfer of an interest in property of the Debtor.

39. During the Preference Period, Defendant was a creditor at the time of each Transfer by virtue of supplying to the Debtor the legal services described above prior to the Preference Period.

40. Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1), because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor. As discussed more fully herein, as of the date of the Funding Agreement, $3,482,105.83 in outstanding fees and expenses of Defendant were owing for services rendered through October 20, 2020.

41. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor to Defendant before such Transfers were made, in that as of the December 7, 2020 inception of the Preference Period, Defendant was owed $3,482,105.83 on account of services rendered through October 20, 2020, which constituted a "debt" owing Defendant or "claim" of Defendant (as those terms are defined in the Bankruptcy Code) prior to being paid by the Debtor.

42. Each Transfer was made while the Debtor was insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

43. Each Transfer was made during the Preference Period.

44. As a result of each Transfer, Defendant received more than it would have received if: (i) the Debtor's case was a case under Chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the claims scheduled by the Debtor, the proofs of claim that have been received to date and the impaired treatment afforded holders of General Unsecured Claims under the Plan, the Debtor's liabilities exceed its assets to the point that holders of General

Unsecured Claims are not expected to receive payment in full on account of their respective allowed claims from the Trust; rather, as of the date of filing of the Plan, such holders were projected to receive approximately 2 cents on the dollar, and as of the date hereof, have received approximately 8 cents on the dollar.

45. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

### COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

46. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

47. To the extent one or more of the Transfers set forth in paragraph 25 and the Other Transfers set forth in paragraph 32 that were made from March 7, 2019 to the Petition Date were not made on account of an antecedent debt, or was a prepayment for goods and/or services subsequently received, or was a debt incurred by Medley Management or another person or entity comprising the "Medley complex" referenced in Defendant's Supplemental Declaration or services provided to another entity or person, subject to proof, Plaintiff pleads in the alternative that the Debtor did not receive reasonably equivalent value in exchange for such Transfer(s) and/or Other Transfers that were made from March 7, 2019 to the Petition Date (the "Potentially Fraudulent Transfers") and:

    A. was insolvent as of the date of the Potentially Fraudulent Transfers, or became insolvent as a result of the Potentially Fraudulent Transfers; or

    B. was engaged, or about to engage, in business or a transaction for which any property remaining with the Debtor or for whose benefit the Potentially Fraudulent Transfers was made was an unreasonably small capital; or

      C.    at the times relevant to this Complaint, intended to incur, or believed it would incur, debts beyond its ability to pay upon maturity.

48. Based upon the foregoing the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
### (Avoidance of Fraudulent Transfer Pursuant to State Law – 11 U.S.C. § 544 and Applicable State Law)

49. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

50. Plaintiff brings this claim under section 544(b)(2) of the Bankruptcy Code, and applicable law including, but not limited to, the NY Fraudulent Transfer Laws[36] as enacted in the state of New York.

51. To the extent one or more of the Transfers set forth in paragraph 25 and the Other Transfers set forth in paragraph 32 were not made on account of an antecedent debt, or was a prepayment for goods and/or services subsequently received, or was a debt incurred by Medley Management or another person or entity comprising the "Medley complex" referenced in Defendant's Supplemental Declaration or services provided to another entity or person, subject to proof, Plaintiff pleads in the alternative that the Debtor did not receive reasonably equivalent value in exchange for such Transfer(s) and Other Transfer(s) (the "Additional Potential Fraudulent Transfers") and:

---

[36] The New York Uniform Voidable Transactions Act ("NY UFTA") which replaced New York Debtor and Creditor Law ("NYDCL" and, together with the NY UFTA, the "NY Fraudulent Transfer Laws") became effective on April 4, 2020 and applies to transfers made, or obligations incurred, on and after April 4, 2020. The Additional Potential Fraudulent Transfers occurred prior to and after April 4, 2020 and are thus governed by a combination of the NYDCL and NY UFTA.

      A.    was insolvent as of the date of the Additional Potential Fraudulent Transfers, or became insolvent as a result of the Additional Potential Fraudulent Transfers; or

      B.    was engaged, or about to engage, in business or a transaction for which any property remaining with the Debtor or for whose benefit the Additional Potential Fraudulent Transfers was made was an unreasonably small capital; or

      C.    at the times relevant to this Complaint, intended to incur, or believed it would incur, debts beyond its ability to pay upon maturity.

52. Based upon the foregoing, the Additional Potential Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 544(b)(2) and applicable state law.

## COUNT IV
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

53. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

54. Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b) and/or any Potentially Fraudulent Transfers and Additional Potential Fraudulent Transfers pursuant to 11 U.S.C. § 544, 548, and applicable state law (collectively, the "Avoidable Transfers").

55. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

56. Pursuant to 11 U.S.C.§ 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus (i) pre- and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment and (ii) the costs of this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A. On Plaintiff's First, Second, Third, Fourth, and Fifth Claims for relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 544(b)(2), 547(b) and/or 548 and 550(a), and pre- and post-judgment interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees under applicable law; and

B. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: Wilmington, Delaware
      March 3, 2023

    */s/ Christopher M. Samis*
    Christopher M. Samis (No. 4909)
    **POTTER ANDERSON & CORROON LLP**
    1313 N. Market Street, 6th Floor
    Wilmington, Delaware 19801
    Tel: (302) 984-6000
    Fax: (302) 658-1192
    Email: csamis@potteranderson.com

    James S. Carr (admitted *pro hac vice*)
    Sean T. Wilson (admitted *pro hac vice*)
    **KELLEY DRYE & WARREN LLP**
    3 World Trade Center
    175 Greenwich Street
    New York, New York 10007
    Tel: (212) 808-7800
    Fax: (212) 808-7897
    Email: jcarr@kelleydrye.com
           swilson@kelleydrye.com

    *Counsel to the Medley LLC Liquidating Trust*